# BYNUM et al. v. FIRESTONE TIRE & RUBBER CO.— 177 S. W. (2d) 20.

Western Section.   January 22, 1943.

Petition for Certiorari denied by Supreme Court, May 15, 1943.

Petition for Certiorari denied by Supreme Court of the United States, November 8, 1943.

Mary Guidi and Wilfred A. Hearn, both of Memphis, for appellants.

King, King & Laughlin, and Thomas C. Farnsworth, all of Memphis, for appellee.

KETCHUM, J. This suit was instituted by Jillo Bynum, Robert Mullins and Lonnie Lewis to recover of defendant for overtime compensation, liquidated damages and attorneys' fees alleged to be due them under the provisions of the Fair Labor Standards Act of 1938, 29 U. S. C. A., sec. 201 et seq. The cause was heard by the chancellor on oral testimony as a chancery case pursuant to an order directing that it be so heard. Chap. 106, Pub. Acts 1935. On the hearing the chancellor dismissed the bill and the complainants have appealed.

The complainants are three former employees of the Firestone Auto Supply & Service Store which is owned and operated by the defendant Firestone Tire & Rubber Company of Ohio as a separate and distinct establishment located at the corner of Washington Avenue and North Third Street in the city of Memphis. The period of time involved is from October 24, 1938, the date the Act became effective, to September 22, 1940, the date Mullins' employment ceased. During this period this store operated a typical automobile service station, and sold tires, tubes, gasoline, oil, grease and other articles, and serviced cars, changed and mounted tires, etc., for their customers. The complainants, in their bill, describe themselves as ''general helpers, service men and delivery boys'', and they allege that their principal duties consisted in loading automobile, truck and tractor tires and tubes and other automobile accessories on trucks at defendant's service station for shipment into the states of

Arkansas and Mississippi; that they delivered truck and bus tires and tubes to the owners and operators of fleets of trucks and buses engaged in the transportation of passengers and freight in interstate commerce; that they mounted tires and tubes on the buses, trucks and trailers so used in interstate commerce; and, when directed to do so, delivered truck tires and tubes from the defendant's manufacturing plant to the customers of the Supply & Service Store, and upon delivery mounted such tires and tubes upon the trucks, buses and automobiles of said customers, which automobiles, trucks and buses were used in interstate commerce; and that they serviced the automobiles, trucks and buses of the customers of said Supply & Service Store, the majority of whom were alleged to be engaged in interstate commerce. Briefly stated, their contention is that by reason of their employment as service station attendants at the defendant's Service & Supply Store, and by their performance of their duties above enumerated, they were engaged in interstate commerce, or in the production of goods in such commerce.

The proof shows that the complainants were employed at this store as typical automobile service station employees at a monthly wage of $50. They were paid twice a month, on the 1st and 15th. Their work day was approximately twelve hours with an hour off for lunch and with every other Sunday off. Their duties were those usually performed by service station attendants, such as changing and mounting tires, making service calls, incidental deliveries of tires sold by the store; and the greater part of their time was spent in connection with the local, retail activities of the store.

The defenses set up in the answer were (1) that the complainants, in the scope of their employment, were not

engaged in interstate commerce or in the production of goods in interstate commerce within the meaning of sections 6 and 7 of the Act, 29 U. S. C. A., secs. 206, 207; (2) that they were employed in bona fide local retailing capacity within the meaning of section 13(a) (1) of the Act, 29 U. S. C. A., sec. 213(a) (1); and (3) that they are excepted from the provisions of sections 6 and 7 of the Act by section 13(a) (2) thereof. Section 6 covers the minimum wages and section 7 the maximum hours. Section 13(a) relates to the exemptions from the provisions of sections 6 and 7 of the Act, and is as follows: " (a) The provisions of sections 206 and 207 (secs. 6 and 7 of the Act) shall not apply with respect to (1) any employee employed in a bona fide . . . local retailing capacity . . . (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

The chancellor found as a fact (1) that in the performance of their duties in changing and mounting tires in Memphis upon trucks of customers who were engaged in interstate commerce, the complainants were engaged in interstate commerce, or in the production of goods for interstate commerce, although they could not state with any degree of accuracy what proportionate part of their time was spent in mounting and changing tires on trucks belonging to such interstate carriers; and (2) he further found as a fact that the major part of the time of the complainants as such employees was spent in local retailing capacity; and finally (3) that the employer, the Firestone Auto Supply & Service Store, was, during the period of complainants' employment, a retail store and service establishment, the greater part of whose servicing and selling was in intrastate commerce and that there-

fore the complainants were, under section 13(a)(2) of the Act, excluded from the benefits of sections 6 and 7. He accordingly decreed that the complainants as employees of such retail establishment, the greater part of whose selling or servicing was in intrastate commerce, were excepted from the benefits of sections 6 and 7, and dismissed the bill and amended bills.

To so much of the decree as adjudged that the said Auto Supply & Service Store was a retail establishment the greater part of whose selling and servicing was in intrastate commerce the complainants excepted and prayed and were granted a limited appeal to this court; and to the findings that the complainants were engaged in interstate commerce, or in the production of goods for interstate commerce, in changing and mounting tires on trucks used in interstate commerce, and to the finding that they were employed in a bona fide local retailing capacity for the major part of the time, but did not come within the exemption of section 13(a)(1) of the Act, the defendant likewise excepted and prayed and has obtained a limited appeal.

We concur in the chancellor's finding that the Firestone Auto Supply & Service Store was during the period of complainants' employment a retail and service establishment, the greater part of whose servicing and selling was in intrastate commerce. It was operated as a distinct unit or establishment entirely separate from the manufacturing and wholesale business of the Firestone Tire & Rubber Company on Firestone Boulevard; bought its supplies and merchandise from the latter and other companies, and paid for same just as an independent dealer, and had its own bank account. It had seven employees regularly engaged at the store and they were paid and

their work supervised by the manager there. No manufacturing or processing of goods was done there, and the store was operated as a typical gasoline and tire service station where they sold gasoline, oil, grease, tires, tubes, batteries and other automobile accessories directly to the consumer; and also carried a line of other kindred articles such as bicycles, radios, flashlights, etc., which were sold directly to the consumer. It serviced cars both at its regular place of business and on the streets of Memphis. It had a few customers such as D. Canale & Company and Chase Bottling Company who had large fleets of trucks, some of which were operated in Arkansas and Mississippi, whose cars were serviced at the customers' garages. It also had a few such customers who used large quantities of gasoline to whom it sold gasoline at two cents less per gallon than the regular retail price; and it had three dealer customers to whom it sold gasoline for resale; the gasoline to these dealers, however, was delivered from the Linden Circle station, but the bills were rendered from the Washington street store.

The defendant's auditor, John F. Laumer, made an analysis of all the sales made by the defendant during the period of complainants' employment, based on examination of the original sales tickets, from which it appears that during the period involved the total sales amounted to $716,715, and the total interstate sales amounted to $17,013, or 2.2 per cent of the total; and that the retail sales during the period beginning with October 24, 1938, and ending with December 31, 1940, represented 78.4 per cent of the total, and the sales made directly to the consumers represented 79.5 percent of the total. In common parlance sales made directly to the consumer

are regarded as retail sales. This witness is in no way impeached and the correctness of his analysis is not seriousy challenged. The testimony of the complainants as to the extent of their duties in interstate commerce was largely based upon estimate and conjecture, and, we think, exaggerated. The chancellor expressed the opinion that it was "magnified and colored".

On the entire record we find that the defendant was engaged in a retail business the greater part of whose selling and servicing was in intrastate commerce within the meaning of section 13(a)(2) of the Act.

The complainants have filed twelve assignments of error in which they complain of the chancellor's findings of various facts and his decree based thereon. We do not deem it necessary to deal with them separately. They have been considered by us and have been found to be without merit. We think the conclusion that the defendant was engaged in a retail business and that the greater part of its selling and servicing was in intrastate commerce is determinative of the case, so the complainants' assignments of error are overruled, and it is not necessary for us to consider those of the defendant.

The decree of the chancellor will be affirmed and the costs of the appeal will be adjudged one-half against the complainants and one-half against the defendant and its surety on the appeal bond.

Anderson, P. J., and Baptist, J., concur.